UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cv-62770-GAYLES

**MELVIN B. LONG and JOSEPH KIMBELL,**

    Plaintiffs,

v.

**DANIEL JOSEPH TOUIZER, aka JOSEPH TOUIZER, STEPHANE TOUIZER, aka STEPHAN TOUIZER, PROTECTIM INSURANCE SERVICES LLC., PROTECTIM HOLDINGS LLC, and WHEAT CAPITAL MANAGEMENT LLC.,**

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Third Amended Complaint (the "Motion") [ECF No. 63]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I.     BACKGROUND[1]

This action derives from a scheme by Defendants Daniel Joseph Touizer ("Touizer"); Protectim Insurance Services, LLC ("Protectim Insurance"); Protectim Holdings, LLC ("Protectim Holdings"); and Wheat Capital Management, LLC ("WCM") (collectively "Defendants") to defraud investors by making false representations and misleading statements in connection with purported stock sales. Plaintiffs Melvin Long ("Long") and Joseph Kimbell ("Kimbell") were

---

[1] As the Court is proceeding on a Motion to Dismiss, it takes Plaintiffs' allegations in the Third Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

purchasers of purported stock offered and sold by Defendants. At the time in question, Touizer was CEO and controlling shareholder of WCM, a private equity real estate firm based in Florida. Touizer was also a managing member of Protectim Insurance and Protectim Holdings, two Florida limited liability companies.

On or about February 11, 2016, Touizer solicited Kimbell over the telephone to make an investment in a partial unit of WCM stock. Touizer knew that Kimbell had friends in Florida in the self-storage business and would be interested in such an investment. After that conversation, Touizer, or someone at his direction, mailed Kimbell WCM's business plan and solicited Kimbell to purchase a 0.125 unit of WCM stock for $30,000.00 (the "WCM investment"). In response, Kimbell mailed Touizer a check for that amount.

On or about June 28, 2017, Touizer again called Kimbell asking him to make an investment in a 0.25 unit of Protectim Insurance stock for $75,000.00 (the "Protectim investment"). As a result, Kimbell mailed Touizer a check in that amount. Thereafter, Touizer provided Kimbell with Subscription Agreements/Documents and the Protectim Insurance Services LLC Confidential Private Placement Offering (the "Protectim Insurance Offering") for both the WCM and Protectim investments. The Subscription Agreement and the Protectim Insurance Offering require that the "subscriptions accepted by the Company will be deposited directly into the Company's operating account, utilized for the purposes set forth herein." [ECF No. 51-2]. The proceeds were to be used for "sales and marketing, working capital and general corporate purposes." *Id.*

On or about August 8, 2017, Touizer called Long asking him to make an investment in a unit of WCM stock. Touizer knew that Long was elderly and had savings that could be used for investments. That same day, Touizer sent Long an email that stated: "you can potentially earn over 200% annually in the firm [sic] of profit sharing . . . you can start to potentially earn 15% or more annually starting in a few months from our fee revenues to the firm." [ECF No. 51 ¶ 33].

After that phone conversation, Touizer, or someone at his direction, mailed a package to Long containing a business plan for WCM. Touizer solicited a purchase of one unit of WCM stock for $300,000.00. As a result, Long mailed a check for $30,000.00 on or about August 10, 2017. Soon thereafter, Touizer requested that Long wire the additional $270,000.00 and, in return for sending the money via wire transfer as opposed to a check, Touizer offered Long another 1/3 unit of WCM. Touizer also offered Long an additional 1/2 unit if he would serve on the WCM Advisory Board, but Long did not accept that offer. Long wired the $270,000.00 balance to WCM on or about August 21, 2017.

On or about September 15, 2017, Touizer contacted Long and told him there was a Protectim Insurance Offering where investor funds were to be used exclusively for "the implementation of the business plan, specifically, marketing, offering and providing various insurance products and services to consumers in the U.S." *Id.* ¶ 51. Soon thereafter, Juanita Salazar, from Protectim Insurance, emailed Long a pre-addressed Federal Express envelope so that he could send in an investment check for the Protectim Insurance shares. Long invested a total of $150,000.00 in Protectim Insurance and $300,000.00 in WCM for a total investment of $450,000.00. Long signed two "Subscription Documents" outlining his investment in each entity.

Before Plaintiffs made their investments, Touizer told them over the phone that WCM and Protectim Insurance were profitable companies and otherwise "safe" investments. He also told Plaintiffs that the investment funds would be used for sales and marketing, working capital, and general corporate purposes. In reality, the funds were not used or intended for that purpose. In addition, Touizer represented that the companies would not charge commissions or fees, but Touizer and others used investor funds to pay themselves undisclosed commissions, loans, and fees, before and after Plaintiffs' investment. Touizer also made fraudulent transfers of investor funds from Protectim Insurance to Protectim Holdings without Plaintiffs' knowledge or consent.

3

Neither Long nor Kimbell have been repaid, despite demands for repayment.

On or about May 11, 2018, Touizer pleaded guilty to Count I of a federal Indictment which charged him with Conspiracy to Commit Wire and Mail Fraud, in violation of Title 18, United States Code, Section 1349. *See United States v. Touizer*, No. 17-CR-60286-BB (S.D. Fla. May 11, 2018), ECF No. 93. In his signed Factual Proffer, Touizer admitted to organizing and leading a criminal conspiracy to defraud investors using his companies, including WCM. *Id.* at ECF No. 94. He admitted diverting funds to himself from the sale of stock and other interests. Touizer also admitted that he made materially false and fraudulent statements to investors regarding the use of investor funds, between 2010 and 2017, enabling him to steal, misappropriate, and embezzle millions of dollars. This admission included Plaintiffs' investments. *Id.*

Long initiated this action against Defendants[2] on November 14, 2018. [ECF No. 1]. Long amended his complaint twice and in the Second Amended Complaint added Kimbell. [ECF No. 30]. On November 6, 2019, the Court heard argument on Defendants' Motion to Dismiss the Second Amended Complaint. *See* [ECF No. 50]. The Court granted Defendants' motion dismissing the Second Amended Complaint without prejudice and granted Plaintiffs leave to amend their complaint. [ECF No. 49]. Plaintiffs filed their Third Amended Complaint ("TAC"), [ECF No. 51], asserting three-counts against the Defendants for fraud (Count I), breach of contract (Count II), and unjust enrichment (Count III). The TAC is the subject of the instant Motion.

## II.     LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

[2] The original action was also brought against Saul Daniel Suster and John Kevin Reech. The Court entered a Default Judgment against them on July 17, 2019. [ECF No. 42]. Touizer's brother and co-defendant, Stephane Touizer (aka Stephan Touizer), also engaged in the fraudulent scheme alleged but has not appeared or defended himself in this action.

4

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The pleadings are construed broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). On a motion to dismiss, the court need not determine whether the plaintiff "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).

### III.   DISCUSSION

#### A.   Count I (Fraud)

Defendants present several arguments in their Motion as it relates to Plaintiffs' fraud claim: (1) the claim is duplicative of their breach of contract claim and therefore not actionable; (2) the alleged fraudulent statements are non-actionable puffery; (3) Plaintiffs' allegations are conclusory and lack specificity as required by Federal Rule of Civil Procedure Rule 9; and (4) the allegations in the TAC contradict the contract language, and are thus barred by the parol evidence rule. The Court addresses each argument in turn.

##### 1.   *Fraud Claim as an Independent Tort*

Defendants argue that Plaintiffs' fraud claim is duplicative of their breach of contract claim in violation of the economic loss doctrine. The economic loss doctrine precludes recovery in tort when it flows from a contractual breach. *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1568 (S.D. Fla. 1996).

> Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract. It normally "occurs prior to the contract and the standard of truthful representation placed upon the defendant is not

5

>derived from the contract," i.e., whether the defendant was truthful during the formation of the contract is unrelated to the events giving rise to the breach of the contract.

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) (citations omitted).

Plaintiffs' fraud claim arises from representations made prior to the contract, upon which Plaintiffs relied in deciding to invest with Defendants. Touizer told Plaintiffs that no commission or fees would be charged to investors; 2) the investments were "safe investments"; 3) the investment companies were successful and profitable; and 4) the funds would be deposited directly into the Company's operating account and used for "sales and marketing, working capital and general corporate purposes." [ECF No. 51 ¶¶ 72–75, 93]. By contrast, Plaintiffs' breach of contract claim rests on promises that derived from the existence of the contract, not those made prior. Plaintiffs' breach of contract claim rests on the allegation that Defendants violated provisions of the Subscription Agreement and the terms of the Protectim Insurance Offering, which required that the "subscriptions accepted by the Company will be deposited directly into the Company's operating account, utilized for the purposes set forth herein," which were for "sales and marketing, working capital and general corporate purposes." *Id.* ¶ 93. While there is overlap between the claims, Plaintiffs' fraud claim is supported by separate and distinct facts from their breach of contract claim. *See Yamashita v. Merck & Co.*, No. 11-CV-62473, 2012 WL 488030, at *2 (S.D. Fla. Feb. 14, 2012) ("[I]nducing a party to enter into a contract by misrepresenting a material fact on which the party justifiably relies to its detriment constitutes an independent tort."). Therefore, Plaintiffs properly allege their fraud claim as an independent tort.

### 2.     *Alleged Misrepresentations*

Despite Touizer's criminal guilty plea to the same underlying conduct, Defendants argue that the alleged misrepresentations are non-actionable puffery. "A claim of fraudulent misrepresentation

6

is not actionable if premised on a mere opinion, rather than a material fact." *MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. 4th DCA 2017). A "matter of opinion rather than fact ... constitutes non-actionable puffery." *Id.* Puffery is "generalized, vague, nonquantifiable statements of corporate optimism." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019). "[W]here the person expressing the opinion [has] superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false, then the opinion may be treated as a statement of fact." *Soltero v. Swire Dev. Sales, Inc.*, No. 08-CV-20260, 2008 WL 11411529, at *2 (S.D. Fla. June 17, 2008).

Here, to induce Plaintiffs to invest in his companies, Touizer told Plaintiffs that the investments were safe and that Protectim Insurance and WCM were successful and profitable. Defendants point to these statements as mere corporate optimism. However, any arguable statements of corporate optimism are intertwined with Touizer's factual misrepresentations about the companies' profitability and how Plaintiffs' investments would be used. *See, e.g.*, *Bellocco v. Curd*, No. 802CV1141T27TBM, 2005 WL 2675022, at *2 (M.D. Fla. Oct. 20, 2005) (reading statements of corporate optimism in conjunction with other factual allegations). Touizer knew these statements were false as evidenced by his admission of such.[3] *See Touizer*, No. 17-CR-60286-BB, ECF No. 94. Therefore, these allegations in the TAC are sufficient to survive dismissal.

### 3. *Specificity of Fraud Allegations*

Defendants argue that Plaintiffs' fraud claim must also be dismissed because it lacks the specificity required to plead fraud under Rule 9(b). Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with specificity. Fed. R. Civ. P. 9(b); *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568 (11th Cir. 1994). Rule 9(b) is satisfied if the complaint sets forth:

---

[3] Plaintiffs incorporated Touizer's factual proffer relating to his guilty plea into their TAC. *See* [ECF No. 51-4 at 19].

7

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
> (3) the content of such statements and the manner in which they misled the plaintiff, and
> (4) what the defendants "obtained as a consequence of the fraud."

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (citations omitted). Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

In the TAC, Plaintiffs allege that on specific dates in 2017, Defendants, through Touizer, induced Plaintiffs to invest approximately $555,000 in WCM and Protectim Insurance stock through false and misleading statements. Touizer told Plaintiffs that no commission or fees would be charged to investors, the investments were "safe investments," the investment companies were successful and profitable, and the funds would be used for sales and marketing, working capital and general corporate purposes. Plaintiffs allege that they relied on these false and misleading statements to their detriment. Accordingly, these allegations are pled with sufficient particularity to state a fraud claim.

### 4. *Parol Evidence Rule*

Lastly, Defendants argue that Plaintiffs' fraud claim is barred by the parol evidence rule. Parol evidence is only admissible to prove fraudulent inducement when it does not directly contradict the terms of the agreement. *Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000). It is not evident from the TAC that Plaintiffs' fraud allegations are contradicted by the contractual language. Therefore, this issue is more appropriate for resolution at summary judgment.

For the reasons set forth above, the Motion to Dismiss Count I is denied.

### B.     Count II (Breach of Contract)

Defendants argue that Plaintiffs' breach of contract claim fails because Plaintiffs did not attach all the pertinent contracts to the TAC or reference the specific contract provisions at issue. As a threshold matter, unlike Florida Rule of Civil Procedure 1.130, "there is no corresponding Federal Rule of Civil Procedure that requires a copy of the contract be attached to a complaint alleging a breach of contract claim." *Mancil's Tractor Serv., Inc. v. T&K Constr., LLC*, No. 15-CV-80520, 2015 WL 12866331, at *3 (S.D. Fla. July 28, 2015). "A document referenced in a complaint that is central to a plaintiff's claim is considered part of the complaint for purposes of a Rule 12(b)(6) motion, even if such document is not physically attached to the complaint." *In re All Am. Semiconductor, Inc.*, 490 B.R. 418, 427 n.12 (Bankr. S.D. Fla. 2013) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). Nevertheless, Plaintiffs attached to the TAC what they assert are the contracts relevant to their claims. Plaintiffs need not refer or attach to the TAC other contractual agreements that have no apparent bearing on the claims at issue.

Further, this Court has found allegations that specifically identify portions of the contract that were breached sufficient to withstand a motion to dismiss. *See Mancil's Tractor Serv., Inc.*, 2015 WL 12866331, at *3 ("Count I sufficiently identifies the provisions of the Subcontract that Mancil is alleged to have breached. Mancil's motion to dismiss the breach of contract claim for failure to attach a copy of the contract shall be denied." (citations omitted)). Here, the TAC sets forth specific provisions of the contracts that Plaintiffs contend were breached:

> DEFENDANTS violated the provisions of the Subscription Agreement (Exhibits 1 and 4) and the terms of the Protectim LLC Confidential Private Placement Offering (Exhibit 3, page 6), which required that the "subscriptions accepted by the Company will be deposited directly into the Company's operating account, utilized for the purposes set forth herein." The investor funds were not deposited and used according to the provisions of the Subscription Agreements and the Protectim LLC Confidential Private Placement Offering, because, in part, the investor funds were not used for "sales and marketing, working capital and general corporate purposes."

[ECF No. 51 at 19].

> In addition, the Protectim Protectim [sic] LLC Confidential Private Placement Offering required PROTECTIM, once funded, to secure appropriate insurance agency and agent licensing and agreements with one or more insurers, but TOUIZER failed to fulfill these obligations, due to his fraudulent transfers of fund to benefit himself and other entities. (See Exhibit 3, pages 9 and 10).

*Id.* According, the Motion to Dismiss Count II is denied.

### C. Count III (Unjust Enrichment)

Defendants argue that there can be no unjust enrichment claim where the parties agree that an express contract exists. Under Florida law, a party may plead unjust enrichment as an alternative for relief if the parties contest whether an express contract exists governing the subject of the dispute. *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013). Otherwise, the unjust enrichment claim fails. *Id.* In this case, Plaintiffs allege that they were fraudulently induced into entering the express contract that exists between the parties, thereby making the contract voidable. *See Lance Holding Co. v. Ashe*, 533 So. 2d 929, 930 (Fla. 4th DCA 1988) ("It is a fundamental proposition that a contract induced by fraud is voidable"). Under these circumstances, dismissal of Plaintiffs' unjust enrichment claim would be premature. *See Shaheen Real Estate LLC v. Daniel Joseph Touizer et al.*, Case No. 19-CV-60942-RS (S.D. Fla. July 21, 2020), ECF No. 59 (denying motion to dismiss unjust enrichment claim as premature where the plaintiff alleged fraudulent inducement); *Coffey v. WCW & Air, Inc.*, No. 3:17-CV-90-MCR-CJK, 2018 WL 4154256, at *9 (N.D. Fla. Aug. 30, 2018) ("It would be premature to decide that Plaintiffs are precluded from raising an unjust enrichment claim" where Defendants deceived Plaintiffs into entering purchase agreements). Further, the law "does not require the dismissal (at the motion to dismiss stage) of an unjust enrichment claim merely because an express contract exists that arguably governs the conduct complained of." *In re Checking Account Overdraft Litig.*,

694 F. Supp. 2d 1302, 1321 (S.D. Fla. 2010). As this issue is best left for summary judgment, the Motion to Dismiss Count III is denied.

### IV.     CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, [ECF No. 63], is **DENIED**.

2. Defendants shall file an answer to the Third Amended Complaint on or before February 25, 2021.

**DONE AND ORDERED** in Chambers at Miami, Florida this 11th day of February, 2021.

　

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE